Southern Dry Dock Company v. Steamboat J. D. Perry, Captain Baird and Owners.

No. 1726.—SOUTHERN DRY DOCK COMPANY *v.* THE STEAMBOAT J. D. PERRY, CAPTAIN A. BAIRD AND OWNERS.

The judicial power of the United States extends to all cases of admiralty and maritime jurisdiction. Constitution of the United States, section second, article third.

The District Courts of the United States shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction. Act of Congress, September 24, 1789.

A proceeding by provisional seizure, authorized by State law, when taken out against a vessel of a foreign port, while lying in a port of this State, to enforce a claim for repairs made and materials furnished at the foreign port, is a proceeding *in rem* or in admiralty, and the State courts are without jurisdiction. *Per curiam:* A distinction must be taken between a lien on a vessel at the home port for materials furnished and labor done in repairing her, and the lien for the same, when the vessel is found in a foreign port. In the former case no admiralty lien exists in favor of the builder or furnisher of materials, and the local jurisdiction attaches. But in the latter case an admiralty lien exists, and the State courts are without jurisdiction to enforce it. The form of the writ or proceeding, provided by the local law, is immaterial, if the object sought is to enforce an admiralty lien.

In a case like this, however, where the master has been cited personally, and is sought to be made liable in his individual capacity, the State courts, while they are without jurisdiction to proceed *in rem* by provisional seizure, have jurisdiction of the personal action.

APPEAL from Fifth District Court, parish of Orleans. *Leaumont, J.* *Bentnick Egan,* for plaintiff and appellant. *Given Campbell,* for defendants and appellees.

HOWE, J. The petition of the plaintiff alleged "that Capt. A. Baird and the owners of the steamboat J. D. Perry, a boat engaged in carrying freight and passengers for hire," were indebted to petitioner *in solido,* in the sum of $1029 30, for work and materials furnished in making repairs to the said steamboat; and after claiming *a privilege on the vessel,* they prayed that a writ of provisional seizure might issue against her, and that Capt. Baird and the owners might be cited and condemned to pay the plaintiff the sum claimed, with interest, "*and with privilege on the steamboat J. D. Perry.*"

The writ was issued and the vessel seized. Baird was cited, as captain, to answer the petition, and an answer was filed in the form of a general denial by "the defendants." A supplemental petition was afterwards filed by the plaintiff, averring that Baird was sole owner. No *contestatio litis* was formed on this, but as evidence was offered and received, without objection, to prove the ownership by Baird, we will consider the case, as if the vessel was the property of Baird, the personal defendant.

A peremptory exception was filed on behalf of the defendants, generally, to the jurisdiction of the court, on the ground that the proceeding was one *in rem* to enforce an admiralty claim against the vessel for repairs and materials. A rule was also taken to set aside the writ of personal seizure for the same reason, and the exception and rule and the merits were tried together. The court maintained the exceptions and dismissed the suit, and the plaintiff appealed.

From the manner in which the case has been conducted, it becomes necessary to consider it in two aspects: First, as to the validity of the writ of provisional seizure, (and this must depend on the original petition and affidavit); and second, as to the right to a personal judgment against Baird.

1. The question of validity of the writ of personal seizure, considered from the point of view of the original petition and affidavit, is one which has been fruitful of discussion in the State and national tribunals. By section second of article third of the Constitution of the United States, it is provided that the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction; and, in execution of this broad provision, it is declared by the act of Congress of September 24, 1789, that the District Courts of the United States "shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." The wisdom of these provisions is apparent, yet no one, familiar with the subject, can have failed to observe a constant tendency to evade or infringe them, and in every commercial city of our seacoast the ships and vessels of other States and nations have been repeatedly subjected to annoyance in violation of these salutary rules.

The Supreme Court of the United States, whose rulings on this subject are necessarily of highest authority, has had occasion recently to condemn this increasing abuse and to formulate the true doctrine in the premises. In the case of the Moses Taylor, 4 Wallace 411, that court said:

"The distinguishing and characteristic feature of such suit," (*in rem* in the admiralty,) "is, that the vessel or thing proceeded against is itself seized and impleaded, as the defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel or thing itself, which gives to the title, made under its decrees, validity against all the world. By the common law process, whether of *mesne* attachment or execution, property is reached *only* through a personal defendant, and then only to the extent of his title. Under a sale, therefore, upon a judgment in a common law proceeding, the title acquired can never be better than that possessed by the personal defendant. It is his title, and not the property itself, which is sold. The statute of California to the extent in which it authorizes actions *in rem* against vessels for causes of action cognizable in the admiralty, invests her courts with admiralty jurisdiction."

And to this extent the statute was declared to be void.

In the case of the Hine, 4 Wallace 555, the same tribunal, in declaring the nullity of a statute of the State of Iowa, by which suits

substantially *in rem* against vessels for causes, cognizable in the admiralty, were authorized, and alluding to the clause of the act of 1789, which saves to suitors "the right of a common law remedy where the common law is competent to give it," said:

"It could not have been the intention of Congress, by the exception in that section, to give the suitor all such *remedies* as might afterwards be enacted by State statutes, for this would have enabled the States to make the jurisdiction of their courts concurrent in all cases by simply providing a statutory remedy for all cases. Thus the exclusive jurisdiction of the federal courts would be defeated."

In the case of the Belfast, 7 Wallace 624, the same court held language which is especially applicable to the case at bar. Alluding again to the "common law remedy," which is saved to the suitor and which is now urged before us as a justification for the issuance of the writ of provisional seizure in the present suit, it said:

" Proceedings, in a suit at common law, on a contract of affreightment, are precisely the same as in suits on contracts not regarded as maritime, wholly irrespective of the fact that the injured party might have sought redress in the admiralty. When properly brought, the suit is against the owners of the vessel, and in the States, where there are attachment laws, the plaintiff may attach any property not exempted from execution belonging to the defendant.  *  *  * *Liability of the owners* of the vessel under the contract being the foundation of the suit, nothing can finally be held under the attachment, *except the interest of the owner* in the vessel, because the vessel is held, under the attachment, as the property of the defendant and not as the offending *thing*, as in the case of a proceeding *in rem* to enforce a maritime lien."

It is apparent, then, that our State courts can have no power to enforce, by proceedings *in rem*, an admiralty lien against a vessel. They may seize and hold for final judgment the interest of a personal defendant *in a vessel*, in proper cases, by any writ addressed to such interest alone. The name of the writ is unimportant. It is commonly called attachment; such is its name in this State; but by any other name it would have as great validity, and the principal question in the case at bar, which we find it necessary to decide, is, whether the writ of provisional seizure could lawfully issue. We are of opinion that it could not.

The privilege thus sought to be enforced is an admiralty lien—the lien of a material man—for work and materials furnished in New Orleans to a foreign vessel, which came hither from the Ohio river and was bound to White river, in Arkansas. The cases cited by plaintiff against this position are not in point, for there is a wide difference in legal necessity between work done in building a vessel on shore, at

6

the place of her nativity, and work and materials furnished by way of repairs in a foreign port. The former has not, the latter have, an admiralty lien. The privilege springs from the nature of the debt, and the writ of provisional seizure by which it is sought to be enforced, grasps the thing itself, and not merely the interest of some person or persons in the thing. If enforced by judgment, " with privilege," as prayed for in the original petition in this case, there would be sold, not the interest of Baird, for it is not alleged that he has any, or of any other person, but the vessel herself, her tackle, apparel and furniture, free and clear of all titles, interests, mortgages, privileges and other incumbrances, the claims of the whole world being trans- ferred to the fund realized. We can see no practical difference in origin, progress and result between the operations of such a writ and those of admiralty process. It goes as far and strikes as deeply.

It is urged that the writ of provisional seizure in this case is a " conservatory act" merely, and not liable to the objection of infring- ing the admiralty jurisdiction. It is true that the writ is conservatory, but so also is the admiralty process which issues upon the filing of a libel, being provisional merely and falling to the ground if the libel- ant does not establish a case, or if the claimant establishes a defense. The objects of the two writs are identical; both are issued upon the allegation of a privilege, upon a mere affidavit and without bond in favor of the owner of the thing seized. So far as the writ of provi- sional seizure and the prayer for the enforcement of the privilege, in this case, are concerned, the action is *in rem, against the object seized,* its true ownership being of no moment. That object being a vessel and the privilege a maritime lien, we have, infolded in the suit, a pro- ceeding which is in reality an admiralty proceeding, and the fact that the plaintiff asked, also, for a personal judgment against Baird, can not divert our attention from the fact that he has asked for a judgment *in rem* against the vessel described as the property *of some one else.*

The orginal petition of the plaintiff, with a few changes of termino- logy, would be a libel in admiralty, and its prayer does not differ sub- stantially from that of a libel in which the actions *in rem* against the vessel and *in personam* against the master are joined. To sustain the writ of provisional seizure and a consequent judgment against the vessel for the privilege alleged, would be, by indirection at least, to infringe the exclusive jurisdiction of the courts of the United States.

2. But, as the pleadings stand, a personal action also is instituted against Baird, and we think the judge *a quo* went too far in dismissing the entire suit. The writ of provisional seizure was properly set aside, for the petition and affidavit on which it was asked for, did not authorize its issuance. But there is evidence enough to justify a personal judgment against Baird who was duly cited.

It is therefore ordered and adjudged that the judgment appealed from be reversed. It is further ordered that the writ of provisional seizure issued herein be quashed, with costs thereof; that the plaintiff have judgment against the defendant, A. Baird, for the sum of one thousand and twenty-nine dollars and thirty cents, with legal interest from January 2, 1867, and other costs of the lower court; and that the appellees pay the costs of appeal.